Mr. Christopher B. Spears
502 Clover leaf Ln.
McKinney TX 75072
Phone: (972)-369-2333
e-mail: cbspears@yahoo.com

Plaintiff Appearing Pro Se



# United States District Court
## Western District of Texas
### Waco Division

| | |
|---|---|
| CHRISTOPHER B. SPEARS, | Case No: W20CA955 |
| Plaintiff, | **COMPLAINT** |
| | **Demand for Jury Trial** |
| vs. | |
| JOHNSON CONTROLS INC., and | |
| JOHNSON CONTROLS FEDERAL | |
| SYSTEMS INC. | |
| Defendants | |

COMES NOW Plaintiff CHRISTOPHER B. SPEARS and alleges as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is an action concerning the employment of Plaintiff CHRISTOPHER B. SPEARS (SPEARS) with Defendants JOHNSON CONTROLS INC. and JOHNSON CONTROLS FEDERAL SYSTEMS INC (jointly herein JOHNSON CONTROLS) and the termination of that employment. The Plaintiff's claims for unlawful retaliation and reprisal arise under the National Defense Authorization Act and specifically 10 U.S.C.A. § 2409 and 41 U.S.C.A. § 4712. The Plaintiff also states claims for discrimination and retaliation which arise under Title VII Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. 2000e *et seq* and the Texas Commission on Human Rights Act (TCHRA) (Texas Labor Code Chapter 21 ,V.T.C.A., Labor Code § 21.001 et seq).

## PARTIES

2. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, 41 USC § 4712(c)(2), and 10 USC 2409(c)(2) as well as 42 U.S.C. § 2000e-5(g). This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). This Court has supplemental jurisdiction over the related state claims set out herein under 28 USCS § 1367.

3. Plaintiff SPEARS is an individual who resides in McKinney Texas in Collin County. SPEARS was formerly employed by JOHNSON CONTROLS at Ft Hood in Bell County Texas for 2 years 4 months.

4. Defendant JOHNSON CONTROLS, INC is an International company organized under the laws of Ireland. Its international headquarters is in Cork, Ireland. It is incorporated in the state of Wisconsin. It offers HVAC equipment, building automation, security, fire detection, batteries, and other related products, as well as building control systems, energy management, and integrated facility management services. Johnson Controls serves customers worldwide. It is a contractor to the US government at Ft Hood in Bell County Texas under a contract to provide all labor, materials, equipment, tools, transportation, supervision, and any other items necessary for the Operation and Maintenance (O&M) of the Ft. Hood, Johnson Controls, Inc. (JCI) Metasys® Front-End Software and associated Direct Digital Control (DDC) systems. Its main headquarters and principle place of business in the US is located in 5757 N. Green Bay Ave. Milwaukee, WI 53201. It has a regular place of business in Bell County Texas is located at Ft Hood. JOHNSON CONTROLS, INC regularly does business in Bell County, Texas.

5. Defendant JOHNSON CONTROLS FEDERAL SYSTEMS, INC is incorporated in the state of Maryland. It is a contractor to the US Government at Ft Hood to provide all labor, materials, equipment, tools, transportation, supervision, and any other items necessary for the Operation and Maintenance (O&M) of the Ft. Hood, Johnson Controls, Inc. (JCI) Metasys® Front-End Software and associated Direct Digital Control (DDC) systems. It has its main headquarters and principle place of business at 2101 Gaither Rd Ste 400, Rockville, MD. It has a regular place of business in Bell County Texas is located at Ft Hood. .JOHNSON CONTROLS FEDERAL SYSTEMS, INC regularly does business in Bell County, Texas.

## VENUE

6. All of the named parties are located within the geographic jurisdiction of this Court. The location where SPEARS was employed and the location where most of the events giving rise to this action occurred are located within the geographic jurisdiction of this Court. The violations of Plaintiff's rights occurred in Bell County, Texas. The records pertinent to the action are located in Bell County, Texas or are electronically maintained. Accordingly, venue is proper in this district pursuant to 28 USC§ 1391(e).

## INTRA-DISTRICT ASSIGMENT

7. The appropriate assignment for this action is Waco Division pursuant to Local Rules of the Western District of Texas because the Parties are all to be found within Bell County and most or all of the conduct complained of occurred there.

## FACTS COMMON TO ALL CLAIMS

8. Plaintiff SPEARS was employed by JOHNSON CONTROLS from October 2011 through September 2015 as a Systems Administrator in Twenty Nine Palms California. That position ended when the contract ran out. On or about September 30, 2015 Spears received a phone call from Michael Tanvoren of JOHNSON CONTROLS who directed Spears to complete the online application for a Fort Hood Cyber Security Systems Administrator position which was listed as open. SPEARS was hired for that position.

9. SPEARS was employed by JOHNSON CONTROLS as a System Administrator at Ft. Hood in Killeen Texas from November 2015 through March 2018. Project Manager Mr. David Stephenson, (STEPHENSON) was assigned as his supervisor. The work at Ft Hood was performed pursuant to a contract with the US Army.

10. Plaintiff SPEARS is African American. The main contact with the Army under the Ft. Hood contract was Daniel C. Kariuki, UMCS Manager US Army Garrison Fort Hood, who is also black.

11. SPEARS' background and his record as an employee in both California and Texas were exemplary.

12. The position in Texas for which SPEARS was hired was as a Systems Administrator. Shortly after he started SPEARS was asked if he could also do Systems Integration responsibilities. He responded that he could try to learn but he had no training, no experience or established skills in this area. STEPHENSON was unreasonably harsh and critical about the fact that SPEARS was not a Systems Integration specialist.

13. Systems Administration and Systems Integration are two different roles and skill sets. Systems Integration specialists set up the initial programming for the computer controls of HVAC and other building systems. Systems Administrators handle the ongoing management, upkeep, and administration of the systems after they are in place. SPEARS background was in Systems Administration and that was the job duties for which he was hired.

14. Over the ensuing months STEPHENSON repeatedly referred people to SPEARS for Systems Integration tasks and became angry and overly harsh when SPEARS explained his limitations.

15. STEPHENSON ignored SPEARS attempts to illustrate the distinction between the two roles and refused to accept the gap in staffing. STEPHENSON was unreasonably harsh and critical about the fact that SPEARS was not a Systems Integrator. The most aggressive illustration of STEPHENSON'S negative behavior towards SPEARS was in a phone call to SPEARS which occurred around February 2016. STEPHENSON shouted obscenities and repeatedly stated "YOU MUST NOT KNOW WHO YOU WORK FOR." STEPHENSON falsely reported to Kariuki that SPEARS was performing System Integration task. Systems Integrators set up the initial programming for the computer controls of HVAC and other building systems. Systems Administrators are responsible for UMCS server(s) management and system wide maintenance

16. From very early on STEPHENSON treated SPEARS unfairly and less favorably than other workers who were not black.

17. In or about January 2016 Joanne Mendoza (MENDOZA), a white female, was hired as a systems administrator. She had the same credentials as SPEARS. DOD classified them both as Information Assurance Technician (IAT).

18. From the outset STEPHENSON showed favoritism for MEDONZA in that she was placed in a position over SPEARS. SPEARS had to go through her for any task he needed to perform. She was a *de faco* lead person or supervisor even though she did not have that title. She worked closely with STEPHENSON and they worked in cooperation in carrying out the acts which are the subject of SPEARS' claims.

19. MENDOZA would commonly make racial comments. For example she stated that she did not know why black people do not speak properly. MENDOZA was also angry and hostile towards black individuals in the work place and she frequently snapped at Daniel C. Kariuki, and SPEARS. She would sometimes snap and snarl at SPEARS and other times would refuse to speak to him. She did not behave in this way to others in the workplace.

20. MENDOZA's outbursts, criticisms, and vile in office behavior created a hostile environment. At one point she was heard to mumble under her breath "any monkey can copy and paste a document" or words to that effect. She was referring to Daniel Kariuki who is African.

21. Professionally she was undermining all the work that SPEARS and Daniel Kariuki would do. At one point she improperly removed Daniel Kariuki's access from the server. She would also unfairly criticize SPEARS and make false accusations against him. On another occasion she falsely accused SPEARS of closing out work that had not been completed.

22. STEPHENSON and JOHNSON CONTROLS were well aware of her behavior. In fact, in 2017 she was required to write a letter of apology to those she had offended by this behavior. This was not sent to Daniel Kariuki or SPEARS who were the targets of her inappropriate behavior and attitude. She apologized to the co-workers for her treatment of SPEARS and Kariuki but not to the victims. SPEARS is informed and believes and alleges thereon that the Army had complained about her behavior which led to the writing of the letter.

23. STEPHENSON and MENDOZA unfairly criticized and took disciplinary action against SPEARS. For example, he was accused of installing unauthorized software on a government computer. This was the result of a misunderstanding. He was told by the security

authorities to just uninstall the software. SPEARS was given a disciplinary write up by Stevenson. There was another worker who installed the same software in the same time period. Other person involved, who is white, was not written up. There is no official mention of his participation. The other worker reported that he told STEPHENSON that he should not write up SPEARS.

24. Another new employee named Evaristo Blanco (BLANCO), a non-black male, was hired and arrived in about October 2016. His credentials were the same as MENDOZA and SPEARS. Like MENDOZA, STEPHENSON put BLANCO in charge of SPEARS. BLANCO was very aggressive and hostile towards SPEARS. For example, early on he walked into SPEARS' office and asked a question and said "you are the most ignorant person I even met" or words to that effect. BLANCO focused his aggression and combativeness on Daniel C. Kariuki, and SPEARS. STEPHENSON and JOHNSON CONTROLS were aware of his behavior and did not correct it.

25. Workers including MENDOZA, STEPHENSON, and BLANCO made frequent disparaging remarks about SPEARS in e mails and other communications.

26. In early July 2017 SPEARS was instructed by MENDOZA to install LN builder 3.5 software. It late turned out that this installation was a problem. There was an investigation between July 5 and 11. During the investigation SPEARS' elevated access card was suspended. At the end the installation this installation was determined by the Army not to be a problem and SPEARS' access card was reinstated. Thus, the Army exonerated SPEARS. However, STEPEHENSON gave him disciplinary write up. MENDOZA who instructed the installation was not disciplined or written up.

27. On or about July 25, 2017 STEPHENSON made a report against SPEARS to corporate security. This resulted in an extensive new background investigation which was totally unnecessary and contrary to normal practice. Normally a new background investigation is only conducted as a result of something serious like a criminal charge or drug use. This investigation resulted in a 200 page background report. Plaintiff allege this background check was intended as harassment of him and in an effort to develop an excuse to terminate his employment.

28. Prior to Sept 8, 2017 one of SPEARS duties, system backup, was reassigned BY STEPEHENSON to MENDOZA. In early September MENDOZA performed a remote access of Daniel Kariuki's computer system. This was an Unauthorized Access by MENDOZA. She did it outside of her normal work. It was not her job and she was not asked or assigned to do this. Her actions violated an army instruction. She had no approval and Daniel Kariuki had no knowledge she was doing this. MENDOZA was able to do this unlawful access because she was assigned by STEPEHSON to do the backup.

29. SPEARS reported the inappropriate access by MENDOZA to Daniel Kariuki. Kariuki was the Army Corps Contracting Officer Representative and a federal employee of the Department of Defense, responsible for contract oversight management. Thus, he was the appropriate person to whom such a report should be made. Kariuki did a write up. The Army removed MENDOZA from the program and banned her from accessing the system. There was an additional investigation and STEPHENSON was found to have enabled MENDOZA. He was removed from his positon. He continued in the position on a temporary basis while JOHNSON CONTROLS sought a replacement.

30. SPEARS is informed and believes thereon that STEPHENSON and MENDOZA were not terminated by JOHNSON CONTROLS and have been employed by JOHNSON CONTROLS or related companies elsewhere.

31. During the time when STEPHENSON was being terminated he arranged for the termination of SPEARS. On March 26, 2018 SPEARS' employment was abruptly terminated. No written reason for the termination was given. He was told that his privileged user account issued by the US Army Ft. Hood Network Operations Center was suspended pending a violation investigation. He was told that the privileged used suspension prevented SPEARS from performing his duties and therefor SPEARS was terminated. SPEARS is informed and believes and thereon alleges that 1) privileged use account suspension is not uncommon and 2) such suspension does not normally result in termination; and 3) similar incidents involving co-workers had never resulted in termination and 3) that SPEARS was being terminated before the investigation was completed.

32. Eventually SPEARS learned that the suspension of the user account was allegedly due to SPEARS having a camera sitting out on his desk. SPEARS and others used Go Pro cameras in vehicles in the course of their duties. Sometime the cameras were charged in the office. SPEARS had such a camera in his backpack but he did not take it out in the work area and did not leave it on his desk. SPEARS did not use the camera in his desk area or on the base. SPEARS simply stepped away from his desk for a time and STEPHENSON claimed that the camera was found on his desk in his absence. SPEARS believes that STEVENSON or someone acting in concert with him removed the camera from his backpack and placed it on the desk. The reported alleging the camera violation was initiated by STEPEHENSON. It was false and a pretext for unlawfully motivated termination due to race discrimination and retaliation. SPEARS disputes the material facts of the allegation against him.

33. Prior to his termination SPEARS applied for a Project Manager position with JOHNSON CONTROLS. STEPHENSON's actions prevented SPEARS from obtaining this promotion.

34. SPEARS filed charges of discrimination with the EEOC and the Texas Workforce Commission on or about December 6 2018. A right to sue letter was issued on or about July 16, 2020.

### FIRST CAUSE OF ACTION
### Retaliation in violation of NDAA
### 10 U.S.C.A. § 2409 and 41 U.S.C.A. § 4712

35. JOHNSON CONTROLS is and at all times relevant hereto was, a contractor to the United States government at Ft. Hood. SPEARS' employment with JOHNSON CONTROLS was pursuant to that federal contract.

36. As an employee of a federal contractor SPEARS had a right to be free from retaliation for making a protected disclosure. SPEARS' report of September 2017 described herein was a protected disclosure. It alleged gross mismanagement of a Department of Defense contract or grant; and, a substantial and specific danger to public health or safety in the form of

national security and security of confidential Army information; and, violation of law, rule, or regulation related to a Department of the Army contract.

37. The disclosure concerning the improper access of Kariuki's computer system described herein was made to a Department of the Army employee, Daniel Kariuki, who was responsible for contract oversight or management of the contract between JOHNSON CONTROLS and the US Army.

38. The protected disclosure made by SPEARS was known to JOHNSON CONTROLS. The report by SPEARS resulted in a full investigation and the removal of STEPHENSON and MENDOZA from their positions.

39. The actions of Defendants described herein including without limitation discharge of SPEARS from his employment were retaliation prohibited by 10 U.S.C.A. § 2409 and 41 U.S.C.A. § 4712.

40. SPEARS has fulfilled all exhaustion requirements relating to this claim.

41. As a result of the actions of the Defendants as described herein SPEARS has been damaged and continues to be damaged in loss of wages and benefits of employment and has incurred attorney fees and costs of suit.

## SECOND CAUSE OF ACTION

### Race Discrimination in Violation of Title VII

42. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 41 above as if set forth fully here.

43. SPEARS is a member of a protected category under Title VII in that he is African American. SPEARS' race and color were either the sole reason or a motivating factor for the defendant's decision to discharge him.

44. SPEARS performed his work excellently and was qualified for his position.

45. Other employees who were not members of the same protected category were not discharged in similar situations.

46. SPEARS is informed and believes and alleges thereon, that after he was terminated his work was assigned to a person who is not African American.

47. Should JOHNSON CONTROLS respond that the reason it originally gave for the discharge was a legitimate non-discriminatory reason, SPEARS alleges that this reason was false and a pretext. The reasons proffered by JOHNSON CONTROLS at the time for discharging SPEARS were false and a pretext. They were also not applied to other workers who were not African American.

48. SPEARS has fulfilled all exhaustion requirements related to this claim. He timely filed charges of discrimination with the EEOC and the Texas Workforce Commission. He received a right to sue letter from the EEOC and the Texas Workforce Commission.

49. As a result of the actions of the Defendants as described herein SPEARS has been damaged and continues to be damaged in loss of wages and benefits of employment and has incurred attorney fees and costs of suit.

## THIRD CAUSE OF ACTION
### Hostile Work Environment in violation of Title VII

50. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 49 above as if set forth fully here.

51. As described herein Plaintiff suffered intentional, unwanted discrimination because of his race, and color. He was subjected to ongoing harassment including, but not limited to, the following:

   a. Placing MENDOZA and BLANCO as supervisors over SPEARS.
   b. Racial remarks by MENDOZA.
   c. Rude insulting comments and vile behavior by MENDOZA and BLANCO.
   d. Disparaging and rude remarks concerning SPEARS.
   e. Constant unfair criticism of SPEARS' work.
   f. Targeting SPEARS for disciplinary action where non-black employees were not similarly treated.

g. Unfounded actions against SPEARS concerning the installation of software including an installation he was instructed to do by MENDOZA.

52. As a result of the actions of the Defendants as described herein SPEARS has been damaged and continues to be damaged in loss of wages and benefits of employment and has incurred attorney fees and costs of suit.

## FOURTH CAUSE OF ACTION

### Race Discrimination in Violation of Texas Labor Code Chapter 21

### V.T.C.A., Labor Code § 21.051

53. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 52 above as if set forth fully here.

54. SPEARS is a member of a protected category under Texas Commission on Human Rights Act (TCHRA) in that he is African American. SPEARS' race and color were either the sole reason or a motivating factor for the defendant's decision to discharge him.

55. SPEARS performed his work excellently and was qualified for his position.

56. Other employees who were not members of the same protected category were not discharged in similar situations.

57. SPEARS is informed and believes and alleges thereon, that after he was terminated his work was assigned to a person who is not African American.

58. Should JOHNSON CONTROLS respond that the reason it originally gave for the discharge was a legitimate non-discriminatory reason, SPEARS alleges that this reason was false and a pretext. The reasons proffered by JOHNSON CONTROLS at the time for discharging SPEARS were false and a pretext. They were also not applied to other workers who were not African American.

59. SPEARS has fulfilled all exhaustion requirements related to this claim. He timely filed charges of discrimination with the EEOC and the Texas Workforce Commission. He received a right to sue letter from the EEOC and the Texas Workforce Commission.

60. As a result of the actions of the Defendants as described herein SPEARS has been damaged and continues to be damaged in loss of wages and benefits of employment and has incurred attorney fees and costs of suit.

## FIFTH CAUSE OF ACTION

### Hostile Work Environment in Violation of Texas Labor Code

61. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 60 above as if set forth fully here.

62. As described herein Plaintiff suffered intentional, unwanted discrimination because of his race, and color. He was subjected to ongoing harassment including, but not limited to, the following:

   a. Placing MENDOZA and BLANCO as supervisors over SPEARS.
   b. Racial remarks by MENDOZA.
   c. Rude insulting comments and vile behavior by MENDOZA and BLANCO.
   d. Disparaging and rude remarks concerning SPEARS.
   e. Constant unfair criticism of SPEARS' work.
   f. Targeting SPEARS for disciplinary action where non-black employees were not similarly treated.
   g. Unfounded actions against SPEARS concerning the installation of software including an installation he was instructed to do by MENDOZA.

63. As a result of the actions of the Defendants as described herein SPEARS has been damaged and continues to be damaged in loss of wages and benefits of employment and has incurred attorney fees and costs of suit.

## PRAYER FOR RELIEF

Based on the forgoing and the evidence to be presented at trial Plaintiff prays the following:

1. Reinstatement to the same or similar position;

2. An order requiring that SPEARS be placed in a Project Manager or Systems Administrator position at JOHNSON CONTROLS or comparable position;

3. Lost wages, benefits and other compensation in the amount of not less than $150,000 and ongoing;

4. Compensatory and punitive damages in the amount of $1,000,000 and compensatory and punitive damages in the amount of $300,000 under Title VII;

5. An award of attorney fees and costs in an amount to be proven at trial;

6. Interest on unpaid wages;

7. Such equitable or injunctive relief as the Court deems proper;

8. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated this 14 day of October, 2020

*Christopher B. Spears*

Christopher B. Spears

Pro Se Plaintiff